WESLEY RYAN ANDERSON,

      Plaintiff,

      v.                         Case No. 25-cv-2003-bhl

CO MARKIEWICZ,
JOHN DOE RADIOLOGIST,
JANE DOE MEDICAL DOCTOR,
NAPHCARE, and
COUNTY OF KENOSHA,

      Defendants.

## SCREENING ORDER

Plaintiff Wesley Ryan Anderson, who is currently serving a state prison sentence at New Lisbon Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Kenosha County Jail. This matter comes before the Court on Anderson's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Anderson has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Anderson has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $8.48. Anderson's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any

complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Anderson, on October 29, 2023, while being housed as a pretrial detainee at the Kenosha County Jail, Officer Markiewicz closed his cell door without warning, crushing Anderson's hand between the bars. Anderson asserts that he screamed for help, but Markiewicz continued his rounds. About thirty minutes later, Markiewicz returned to Anderson's cell, at which time Anderson told him what happened. Anderson asserts that Markiewicz apologized and told Anderson he did not hear his screams through the glass. He then got health services staff, who gave Anderson Advil and Tylenol for his complaints of pain. Markiewicz also brought Anderson some ice. Anderson asserts that he did not sleep that night because he was in so much pain.

2

The next day, Anderson was taken for an x-ray. He was given Advil in the morning and at night, but it was insufficient to address his pain. A few days later, Anderson was informed that the radiologist had observed no breaks in the bone. Anderson asserts that pain medication and ice was immediately stopped despite his hourly complaints about pain. Anderson states that he persistently complained to his doctor and NaphCare.

Finally, about a month later, on December 2, 2023, Anderson was given another x-ray. He asserts that on December 8, 2023, he was informed that the radiologist had misread the original x-ray and his hand was fractured. He was told he would be given a splint, but he did not receive the splint until a month later. Anderson explains that, on January 4, 2024, he was given another x-ray and he was told that the hand had healed improperly and the splint would not be effective. He explains that he consistently complained about the numbness in his fingers and the bone sticking up. He states that the health services unit staff acknowledge the deformity and ordered physical therapy, which did not start until May 2024 and consisted of three, twenty-minute sessions over a two-month period.

### THE COURT'S ANALYSIS

Anderson was a pretrial detainee at the relevant time, so his claim arises under the Fourteenth Amendment. To state a medical care claim, a pretrial detainee must allege that he suffered from an objectively serious medical condition, and that the defendant's response to the condition was objectively unreasonable. *See Pittman v. Madison Cnty.*, 108 F.4th 561, 566 (7th Cir. 2024); *McCann v. Ogle Cnty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018). With the foregoing legal principles in mind, the Court will allow Anderson to proceed on a medical care claim against Jane Doe Medical Doctor based on allegations that she ignored and/or delayed addressing Anderson's persistent complaints of pain and requests for treatment of his hand injury. Although a close call, Anderson also states a claim against the John Doe radiologist who allegedly failed to detect the fracture in Anderson's original x-ray. Although negligence does not support a Constitutional claim, *see Miranda v. Cnty. of Lake*, 900 F.3d 335, 354 (7th Cir. 2018), development of the record is necessary to determine whether the radiologist's conduct in evaluating the x-ray was objectively reasonable.

Anderson does not, however, state a claim against Markiewicz based on allegations that he closed Anderson's cell door without warning. According to the complaint, Markiewicz did not know that Anderson's hand was in the way and did not hear Anderson screams of pain. Moreover,

3

when Markiewicz learned what had happened, he immediately apologized, contacted the health services unit, and got ice for Anderson's hand. The only reasonable inference is that Markiewicz accidentally closed the door on Anderson's hand, which is not actionable under the Constitution. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015).

Nor does Anderson state a claim against NaphCare or Kenosha County. Private entities acting to fulfill government duties and municipalities are not vicariously liable for the conduct of their employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Instead, to state a claim against a private entity or municipality, a plaintiff must allege direct liability by showing that the constitutional violation was caused by (1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). Anderson does not allege that he was harmed by a policy, custom, or practice. And his own limited experience is insufficient for the Court to infer that a policy or widespread practice exists. "A naked allegation that a [corporation or municipality] has a practice of committing constitutional violations is a legal conclusion of *Monell* liability couched as a factual allegation and thus does not, on its own, state a *Monell* claim." *Austin v. Cook Cnty., Ill.*, No. , 2024 WL 3649022, at *2 (7th Cir. Aug. 5, 2024).

Because Anderson does not know the names of his provider and the radiologist, the Court will add Kenosha County Sheriff David Zoerner as a Defendant for the limited purpose of helping Anderson learn their names. *See Donald v. Cook Cnty. Sheriff's Dep't,* 95 F.3d 548, 556 (7th Cir. 1996). Sheriff Zoerner does not have to respond to the complaint. After his lawyer files an appearance in this case, Anderson may serve discovery upon Sheriff Zoerner (by mailing requests to his lawyer at the address in the notice of appearance) to get information that will help him learn the names of the Defendants.

For example, Anderson may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34 seeking information or documents such as his medical records that will help him learn their names. Because Anderson does not state a claim against Sheriff Zoerner, his discovery requests must be limited to information or documents that will help him learn the names of the individuals allegedly responsible for violating his rights. Anderson may not ask Sheriff Zoerner about any other topic, and Sheriff Zoerner is under no obligation to respond to requests about any other topic.

After Anderson learns the names of the responsible individuals, he must file a motion to replace their names for the Doe placeholders. The Court will dismiss Sheriff Zoerner as a Defendant once Anderson identifies the Defendants. After the Defendants have an opportunity to respond to the complaint, the Court will set a deadline for discovery. At that point, Anderson may use discovery to get the information he believes he needs to prove his claims.

Anderson must identify the names of the Defendants within ninety days of Sheriff Zoerner's lawyer filing a notice of appearance. If he does not or does not explain why he is unable to do so by the deadline, the Court may dismiss this case based on Sheriff Zoerner's failure to comply with the Court's order and to diligently pursue this action. *See* Civil L. R. 41(c).

**IT IS THEREFORE ORDERED** that Anderson's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Anderson fails to state a claim against CO Markiewicz, NaphCare, and County of Kenosha, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Sheriff David Zoerner pursuant to Federal Rule of Civil Procedure 4. Anderson is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Sheriff Zoerner does not have to file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Anderson is located.

**IT IS FURTHER ORDERED** that the agency having custody of Anderson shall collect from his institution trust account the $341.52 balance of the filing fee by collecting monthly payments from Anderson's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of

5

Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Anderson is transferred to another institution, the transferring institution shall forward a copy of this Order along with Anderson remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Anderson is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 8th day of April, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

6